MICHAEL ROSEN
Law Offices
61 Broadway, Suite 2602
New York, New York 10006
mrosenlaw@aol.com

CELL (516) 381-6690            FAX (516) 944-5066
TEL    (212) 867-4100

November 4, 2013

Hon. Nina Gershon
United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

                     Re:    United States v. Irina Shelikhova, et al.
                               <u>10-Cr.-771 (S-1) (NG)</u>

Dear Judge Gershon:

On behalf of Mrs. Shelikhova, who is scheduled for sentencing on November 12, 2013 at 2:30 PM, I submit the following response to the government's sentencing submission [Doc. 663].

In my initial sentencing memorandum on behalf of Mrs. Shelikhova [Doc. 657], I used the words "rare and unusual circumstances" to describe events that are important aspects of her Section 3553(a) history and characteristics factor for Your Honor to consider. Supreme Court decisions such as <u>Gall v. United States</u>, 552 U.S. 38 (2007) and <u>United States v. Pepper</u>, 131 S. Ct 1229 (2011) instruct that the sentencing Court must make an individualized assessment based on the facts presented as well as viewing sentencing also in terms that the characteristics of the offender may be as important as the nature of the offense. Yet, while the government has the time and space to label Mrs. Shelikhova "mastermind" on virtually every one if it's 27 page submission, it totally fails to address my central argument that Mrs. Shelikhova's voluntary return and arranged surrender to the FBI here in June, 2012, is, indeed, a rare and unusual circumstance,which is deserving of consideration in imposing a sentence that is sufficient, but not greater than necessary, to serve the goals of sentencing. The specific situation here, I respectfully

submit, is outside of the "heartland" of circumstances envisioned by the Sentencing Commission in compiling the Guidelines.

Specifically, my central argument to Your Honor to consider a sentence that is not as draconian as that suggested by the government (235-240 months imprisonment) or the Probation Department (180 months) focuses on the circumstances surrounding Mrs. Shelikhova's leaving the "safe-haven" of the Ukraine and her knowing and direct voluntary return and surrender to the FBI nearly 17 months ago at JFK Airport. Being advised that she faced certain remand, future imprisonment and potential deportation thereafter, Mrs. Shelikhova, nevertheless, returned to the United States. There is no dispute about that circumstance.

Nor has the government, though in possession of my original submission in early September, even addressed--much less disputed--the contention which I set forth on page 2 [Doc.657], that Mrs. Shelikhova returned and surrendered so that her son, Maxim, could secure a cooperation agreement with the government. In light of the government ignoring this contention, I apologize for its repetition here, but I believe it requires restatement:

> Maxim's counsel stated, in pertinent part:
>
> "...Max played a very significant role in his mother's return to this country after the government made it clear to him 'in no uncertain terms' that he 'would have to get [his] own mother to return to the United States' and that he would have to agree ...to...testify...'against both his mother and father before he would be offered a cooperation agreement' "(Doc. 555, p.4) (Emphasis supplied)

Indeed, that is what happened; Mrs. Shelikhova returned as arranged, Maxim secured his cooperation agreement and the government had its "star" witness at the Drivas trial before Your Honor.

I am not naive, nor a rookie, to believe that Maxim will not be seeking release from his incarceration when he is finally sentenced shortly. Predictably, I would expect his counsel to highlight his cooperation and testimony in this case in seeking a benefit for him. The government will no doubt advise the Court regarding the value of Maxim's cooperation and testimony and the benefit it received because of it. I respectfully submit, that neither of those circumstances would have been possible without Mrs. Shelikhova's return. In light of this extraordinary rare and unusual undisputed factual circumstance, I submit that Your Honor is warranted in considering a benefit for Mrs. Shelikhova for her action in returning when determining her sentence. Additionally, her plea saved both the Court and the government the time and expense of a trial.

I am not by this letter seeking or requesting any evidentiary hearings. I understand full well that cooperating witnesses can seize upon an accomplice's absence and expectation that he or she is in a "safe haven" and will not return. While I will not here quibble with the government's incessant labeling Mrs. Shelikhova as the "mastermind", various cooperators, who will no doubt be seeking relief and leniency in their sentences, had equal or sometimes greater hands-on responsibilities at the clinics and in her absence, had an unavailable target to focus on.

Irina Shelikhova is now 51 years of age. She is in Criminal History Category I. She has been incarcerated in MCC for some 17 months since her surrender in June, 2012. While incarceration of any kind or length is not easy, 17 months at MCC has been "hard" for Mrs. Shelikhova. She has health issues (please see attached), her family has been shattered, her finances taken away. She faces deportation*. She has, is and will be suffering severe punishment for her illegal conduct. As stated in her letter to Your Honor, which was appended to my initial submission, she is sincerely and deeply remorseful.

---

* Also, attached is a MCC <u>Certificate of Completion</u> of another one of its programs.  It is an additional step, albeit small, in the right direction.

I most respectfully ask Your Honor to fashion a sentence for Mrs. Shelikhova, which, considering all the circumstances I have submitted to you, reflects the potential that she will not serve a significant portion of her remaining years in a federal prison.

Thank you for your consideration.

                                                Respectfully,

                                                Michael Rosen

MR:wp



# CERTIFICATE OF COMPLETION
## FOCUS FORWARD

this certificate is awarded to:

# Irina Shelikhova

*MCC New York Education Department*

# August 13, 2013



# The Brooklyn Hospital Center
*Keeping Brooklyn healthy.*

Department of Radiology
121 DEKALB AVENUE
BROOKLYN, NY 11201
PHONE: (718)250-8240

Nymc # 81448-053

## FINAL REPORT

Ordering MD
BUSSANICH, ANTHONY
NaphCare

Attending/cc MD

Patient: Shelikhova, Irina
MRN: 1527712
Gender: F
Date of Birth: Sep 18 1962 (Age 50 at exam)
Location: GRRADO GRR001 BH GRRADO
Pt Type: Outpatient-Routine

| Accession# | Account# | Exam date | Modality | Procedure |
|---|---|---|---|---|
| 1492186 | 33287863 | Aug 8 2013 | US | US - Pelvic and Transvaginal |

Clinical Indication: Fibroid uterus

Transabdominal and endovaginal pelvic ultrasound was performed.

The uterus measures 6.8 x 5.4 x 4.5 cm. There are multiple small fibroids within the uterus measuring up to 1.3 x 1.3 x 1.4 cm. The endometrial echo measures 4.0 mm in thickness which is within normal limits.

There is a small myometrial cyst is seen measuring possibly 4 x 3 mm.

There is no fibroid or mass seen.

The right ovary measures 5.0 x 5.6 x 4.6 cm and contains a hemorrhagic cyst measuring 4.6 x 4.8 x 4.0 cm. The left ovary measures 3.6 x 2.8 x 2.1 cm. It contains a simple cyst measuring 2.6 x 1.7 x 2.0 cm.

There is no fluid in the cul-de-sac.

Impression:

Fibroid uterus.

Small myometrial cyst measuring 4 x 3 mm. Myometrial cysts may be seen in patients with adenomyosis of the uterus. If clinically warranted, a MRI of the pelvis maybe obtained for further evaluation.

Right hemorrhagic ovarian cyst.

Simple left ovarian cyst.

Reported by Godwin Lee on Aug 8 2013 at 12:00 p.m
Electronically signed by Godwin Lee on Aug 8 2013 at 12:05 p.m

*END OF REPORT*